UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE REGENCY NYC, INC.,

    Plaintiff,

-against-

BARBARA ATKINSON and WORTH HIGGINS &
ASSOCIATES, INC.,

    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No.: 1:23-cv-05479-JGCL

**E-DISCOVERY PLAN AND PROPOSED ORDER**

  Defendants BARBARA ATKINSON and WORTH HIGGINS &ASSOCIATES, INC., together with Plaintiff THE REGENCY NYC, INC., (collectively, "Defendants" and together with Plaintiff, the "Parties"), by and through their respective counsel, stipulate and agree that the following ESI Plan and Proposed Order shall govern the preservation, collection and production of electronically stored information and documents in this action.

**1. Preservation of Electronically Stored Information and Paper Documents.**

  **1.1** All parties represent that they have preserved documents relevant to this litigation and have issued legal holds for those documents that will remain in place until the conclusion of this litigation and/or will report promptly to each other in the event that they determine any documents relevant to this litigation have not been preserved.

  **1.2** The Parties will continue to preserve electronically stored information ("ESI")[1] maintained solely for back-up or disaster recovery purposes as such ESI is preserved in the ordinary course of business. The Parties do not need to take measures outside of the ordinary course of business to preserve such ESI. ESI will be collected in a manner that preserves metadata to the extent reasonably possible. Duplicates should be removed from all ESI productions in a manner that does not break up document families (such as emails and attachments), but any duplicate ESI that is not produced should be preserved.

  **1.3** The Parties will discuss in good faith any preservation issues that arise during the course of discovery.

---

[1] ESI shall have the same meaning as the usage of this term in FRCP 34(a)(1)(A) and includes, but is not limited to, emails, text messages and social media posts.

1

## 2. Form of Production for ESI and Paper Documents.

**2.1** ESI derived from e-mail and other electronically created files (e.g., Microsoft Office files, WordPerfect) shall be produced as Bates-labeled .tiff images or when impractical to image, such as for certain Excels, in native format on appropriate media, such as an external hard drive or via FTP.

**2.2** Images shall be produced (1) in Single Page Group IV .tiff files, (2) with an image resolution that shall be at least 300 DPI, (3) with a file naming convention that shall match the Beg Bates number, (4) with a placeholder image for files produced in native form, and (5) retaining the original document orientation. To the extent a color version exists of a pdf, jpg, or ppt file, the image will be produced in color only upon request. Any party may make a request for a color image of any other document to the extent they reasonably believe a color version is likely to meaningfully impact the review of such document or the document is added to the joint exhibit list for trial.

**2.3** Native files shall be produced with full extracted text for all file types of ESI (redacted text will not be produced), (2) as a single text file for each Document, not one text file per page, and (3) with a file naming convention that matches the Beg Bates number. The Parties agree that they shall produce as Native Files: Microsoft Access databases, Microsoft Excel files, .CSV files, and other similar databases and spreadsheet files.

**2.4** Electronic Messages shall be produced in formats that preserve key features of the message (such as media, emojis, sender and recipient names) and which are easily searchable.[2] The parties may extract Electronic Messages as individual files rather than as a "chain" of messages combined into a single file. If a producing party produces a "chain" of messages combined into a single file, the producing party may produce only that portion of the "chain" or file that is responsive. In that event, the producing party must notify the receiving party that it is producing only a section of an Electronic Message pursuant to this paragraph, and may redact non-responsive, irrelevant text messages exchanged with non-parties. The parties will agree to identify the metadata parameters before the production of text messages. Where a responsive Document exists only as a paper Document or a flat electronic file (*i.e.*, a scanned .pdf), the producing party shall produce the Document as a .tiff or .pdf. In scanning paper Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (*i.e.*, paper Documents should be logically unitized). In the case of an organized compilation of separate Documents—for example, a binder containing several

---

[2] "Electronic Messages" refers to any electronic text or media content exchanged between two or more users of a software application. Electronic Messages include both SMS messages sent over cellular networks and messages sent over the Internet using applications such as WhatsApp, iMessage, Facebook Messenger, Twitter (via direct message), Slack, Google Chat, WeChat, and many others.

separate Documents behind numbered tabs—the Document behind each tab should be scanned separately, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Document and attachment fields. The parties shall use their best efforts to unitize the Documents correctly.

2.5  ESI and other tangible or hard copy Documents that are not text-searchable shall be made text-searchable by the producing party. If a party produces a Document that contains redactions, the Document shall only be text-searchable as to the un-redacted portions of the Document.

2.6  Each party reserves the right to request native files for Documents that are difficult to understand after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. If a parent email or attachment contains privileged materials, it will be presumptively reasonable not to produce the native files. Such a request shall be made according to the following protocol:

2.6.1  The requesting party shall make any such request as soon as reasonably practical after receiving a Document production.

2.6.2  The requesting party shall provide a list of Bates numbers of the Documents that it is requesting to be produced in native file format.

2.6.3  Within 5 days of receiving this request, the producing party will either (i) produce the requested native files to the extent reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested Documents. Thereafter, the parties shall confer in good faith regarding the production of the requested native files.

2.7  The parties agree to produce the following ESI metadata fields if the fields are available during collection. Metadata may be redacted only to the extent it reflects privileged information.

| Metadata Field |
| --- |
| **BegBates**: Beginning Bates Number |
| **EndBates**: Ending Bates Number |
| **BegAttach**: Beginning Bates number of the first Document in an attachment range |
| **EndAttach**: Ending Bates number of the last Document in attachment range |
| **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format |
| **FileName**: Filename of the original digital file name |

3

| |
|---|
| **NativeLink**: Path and filename to produced Native file |
| **EmailSubject**: Subject line extracted from an email message |
| **Title**: Title field extracted from the metadata of a non-email Document |
| **Author**: Author field extracted from the metadata of a non-email Document |
| **From**: From field extracted from an email message |
| **To**: To or Recipient field extracted from an email message |
| **Cc**: CC or Carbon Copy field extracted from an email message |
| **BCC**: BCC or Blind Carbon Copy field extracted from an email message |
| **DateRcvd**: Received date of an email message (mm/dd/yyyy format) |
| **DateSent**: Sent date of an email message (mm/dd/yyyy format) |
| **DateCreated**: Date that a file was created (mm/dd/yyyy format) |
| **ProdVolume**: Identifies production media deliverable |
| **ExtractedText**: File path to Extracted Text/OCR File |
| **DateModified**: Modification date(s) of a non-email document |
| **File extension**: file type of document |

**2.8** The parties agree on the following Load File specifications:

    **2.8.1** Images Load File: Yes

    **2.8.2** Metadata Load File: Yes

    **2.8.3** Extracted TEXT: Yes

    **2.8.4** Native Files Produced: Yes

**2.9** De-Duplication

    **2.9.1** A party is only required to produce a single copy of a responsive Document.

    **2.9.2** The parties shall de-duplicate stand-alone Documents or entire Document families globally using MD5 Hash value matching, SHA-1 or such other program supplied by a party's selected vendor. ESI that is not an exact duplicate may not be removed.

    **2.9.3** Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced. Attachments to e-mails shall not be eliminated from the parent e-mail. Rather, parent-child relationships (the association between an attachment and its parent

4

Document or between embedded Documents and their parent) shall be preserved.

**2.9.4** Paper Documents shall not be eliminated as duplicates of responsive ESI.

**2.9.5** The parties shall make reasonable efforts to ensure that Documents produced in native form are decrypted (or that passwords are supplied), but the parties have no duty to identify encrypted Documents prior to production.

**2.9.6** In the event production in the foregoing manner is not possible or practicable for a producing party, the parties shall meet and confer in an attempt to determine an acceptable substitute manner.

## 3. Scope of Production

**3.1** **Time Period.** The Parties shall set forth the requested time period in discovery propounded in the future.

**3.2** **Relevant Sources and Identification/Filtering Methods.**

### 3.2.1 Custodial ESI.

**3.2.1.1** For purposes of this agreement, "Custodial ESI" will mean and refer to ESI collected from a specified custodian through either targeted collection or application of search terms. Custodial ESI shall include, but is not limited to, any source identified as likely to contain relevant information accessible to a custodian, including, but not limited to, locally stored ESI (including email PST files and loose files), ESI stored on active file server(s), ESI stored on personal network drive(s), ESI stored on accessible external media.

**3.2.1.2** **Identification of Custodians.** Each producing Party will identify the custodians they believe are most likely to possess information responsive to requests for production and disclose these custodians to the requesting party. The requesting Party may object to or suggest substitute or additional custodians. The producing Party must provide a justification for the selection of custodians and the reasons why any alternative custodians suggested by the requesting Party are not as relevant. Parties shall meet and confer

5

regarding disputes regarding such requests.

    **3.2.2** **Shared Sources.** For purposes of this agreement, "Shared Sources" will mean and refer to all ESI not attributable to a specific custodian or that are shared by more than one custodian. The Parties agree to search for responsive ESI from Shared Sources including, but not limited to, shared electronic workspaces, servers, document and file management systems, databases, department files, etc., likely to include responsive ESI. Searches of these Shared Sources will be limited to sources identified as likely to contain responsive information. In the interests of avoiding burden, the Parties may collect targeted ESI from shared sources which are identified as responsive and may de-duplicate exact duplicate documents collected from multiple locations prior to production.

    **3.2.3** **Initial Method for Identification of Potentially Relevant ESI.** Each Party has the right to use search terms, technology assisted review, predictive coding, or other filters for Custodial ESI and Shared Sources to identify potentially relevant ESI. If a producing party plans to rely on search terms to filter any ESI sources for potentially responsive ESI, the producing party shall disclose proposed search terms and the sources to which they will be applied to the requesting party prior to applying such terms. The Parties will work in good faith to resolve any disputes as to the methods or search terms used. If the parties cannot agree on search terms or other production scope issues, the producing party shall disclose what it is willing to do prior to production of documents and the requesting party may seek relief. <u>Provided, however</u>, that nothing in the parties' agreement to exchange this information shall constitute a waiver of attorney-client communications, attorney work product or other privilege.

    **3.2.4** **Paper Documents.** Nothing herein will relieve the Parties of the duty to conduct a reasonable search for hard-copy documents in response to a requesting Party's discovery requests. The Parties will not be obligated to produce hard-copy documents which are determined to be exact duplicates of documents produced in electronic form (i.e. printed copies of electronic originals).

**3.3**     **Documents Received in Response to a Subpoena.** ESI and paper documents received by a Party from a third party in response to a subpoena will be produced to the other Party as soon as possible.

**3.4**     **Review Prior to Production.** The producing Party has the right to review

all documents for responsiveness and privilege prior to production.

4. **Privilege Claims.**

   4.1 **Privilege Logs.** When a responding Party withholds information otherwise within the scope of the request for production by claiming that the information is privileged or subject to protection as work product or trial-preparation material, or subject to joint defense/common interest privilege, or otherwise not discoverable, the Party must: produce privilege logs according to the schedule set forth in the Case Management Order (as it may be amended). Privilege logs may be generated on a document by document or categorical basis. The categorical privilege log must contain sufficient information to allow the receiving party to assess the privilege claim. The party receiving a categorical log may request a document-by-document log if it believes that the categorical log is insufficient. The parties agree that they need not log communications exclusively between the parties and their litigation counsel after the filing of the complaint.

   4.2 **Redaction:** The Parties agree that Documents may be redacted for privilege. Redacted documents must also be logged pursuant to Section 4.1.

   4.3 **Inadvertently Produced Privileged or Confidential Materials.** The Parties have included provision for inadvertently produced Confidential material in the protective order referenced in Section 5 below. Non-responsive information within an otherwise responsive document may not be redacted.

5. **Limitations on Discovery.** A party may object to discovery of ESI from sources that the party identifies as not reasonably accessible because of undue burden or expense. In its objection, the party shall identify the reason for such undue burden or expense. On a motion to compel discovery or for a protective order relating to the discovery of ESI, the objecting party bears the burden of showing that the information is from a source that is not reasonable accessible because of undue burden or expense.

| | |
|---|---|
| **MARZEC LAW FIRM, P.C.** | **KANE KESSLER, P.C.** |
| /s/ _____ | /s/ _____ |
| MARZEC LAW FIRM, P.C. | KANE KESSLER, P.C. |
| Jerome Noll, Esq. | S. Reid Kahn |
| Darius A. Marzec, Esq. | Chloë D. Brownstein |
| 776 A. Manhattan Avenue, Suite 104 | 600 Third Avenue |
| Brooklyn, New York 11222 | New York, New York 10016 |
| *Attorneys for Plaintiff* | (212) 541-6222 |

4873-7368-4887 v1

rkahn@kanekessler.com
cbrownstein@kanekessler.com
*Attorneys for Defendants*

**Dated:** January 16, ~~2023~~ 2024

**SO ORDERED:**

*Jessica Clarke* (signature)

The Hon. Jessica G. L. Clarke
United States District Judge